**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0465n.06

No. 09-4509

| | | |
|---|---|---|
| UNITED STATES COURT OF APPEALS **FOR THE SIXTH CIRCUIT** | | **FILED** *Jul 08, 2011* LEONARD GREEN, Clerk |

| | | |
|---|---|---|
| VALENTINA STENAJ, | ) | |
| | ) | |
| **Petitioner,** | ) | PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | **O P I N I O N** |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**Before:  MOORE and KETHLEDGE, Circuit Judges, and Marbley, District Judge.**[*]

**KAREN NELSON MOORE, Circuit Judge.**  Valentina Stenaj ("Stenaj"), a native and citizen of Albania, petitions for review of an order of the Board of Immigration Appeals ("BIA") denying her motion to reopen.  Stenaj was previously included as a derivative beneficiary in her mother's application for asylum, which was denied.  She has since filed a motion to reopen accompanied by an independent application for asylum, requesting the opportunity to present her own claim based on the same facts presented in her mother's application.  In denying her motion, the BIA determined that she presented no new evidence to support her theory of relief.  Because the BIA did not abuse its discretion in denying the motion to reopen, we **DENY** Stenaj's petition for review.

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

## I. BACKGROUND

Stenaj, her mother, Marije, and brother, Gjin, entered the United States on or about August 5, 2002, without having been admitted or paroled. On August 1, 2003, the Department of Homeland Security initiated removal proceedings against them. Conceding removability, Stenaj joined her mother's application for asylum as a derivative beneficiary.[1]

In her asylum application, Marije claimed that she and her daughter would face persecution in Albania because of the anti-Communist political beliefs and activities of their family members. Specifically, she described an incident in March 2002 in which the family was attacked by armed men in their home. At a hearing before the immigration judge ("IJ"), Marije and Stenaj testified about their experiences in Albania and submitted documentation corroborating their claims, including medical reports, country reports, and news articles. They both testified about the March 2002 incident and the threats they had received after the attacks. Gjin and Mirash, Marije's sons and Stenaj's brothers, also testified on their behalf.[2]

In an oral decision issued on September 26, 2005, the immigration judge determined that they had not testified credibly in support of their claims and denied their applications for relief. Marije

---

[1]An alien who is granted asylum, the "principal" applicant, may confer asylum status on a spouse or child who joins the alien's claim; the spouse or child is then considered a "derivative" asylum beneficiary. 8 U.S.C. § 1158(b)(3); 8 C.F.R. § 1208.21(a).

[2]Gjin filed separate applications for asylum, withholding of removal, and protection under the CAT, claiming that he was arrested and beaten by the Albanian police due to his support of the Democratic Party. His applications were denied on the grounds that he failed to testify credibly. We denied his petition for review because substantial evidence supported the adverse credibility finding. *Stenaj v. Mukasey*, 276 F. App'x 468, 472-73 (6th Cir. 2008).

and Stenaj appealed to the BIA. Despite overturning the IJ's adverse credibility finding, the BIA dismissed the appeal on the grounds that Marije and Stenaj had failed to establish past persecution on account of a protected ground.

Marije and Stenaj filed a petition for review of the BIA's decision in this court. The government moved to remand the case to the BIA on the grounds that the BIA had engaged in improper de novo factfinding. We granted the government's motion, instructing the BIA on remand to "limit its consideration to the issues of whether the petitioners suffered past persecution and possess a well-founded fear of future persecution or are otherwise eligible for humanitarian asylum." On October 10, 2008, the BIA affirmed its previous conclusions and again dismissed the appeal. Neither Marije nor Stenaj sought review of the BIA's decision.[3]

On January 8, 2009, Stenaj filed a motion to reopen the prior proceedings. Stenaj requested an opportunity to pursue her own application for asylum and attached an independent application. She explained that she had married a lawful permanent resident alien in July 2008, before the BIA issued its final decision, thereby depriving her of derivative status. As a result, she could not file a

---

[3]Under the asylum regulations, the denial of a principal applicant's asylum claim "shall also result in the denial of asylum status to any dependents of that principal applicant who are included in that same application." 8 C.F.R. § 1208.14(f). The BIA's decision thus operated as a denial of asylum status to Stenaj. That denial did not, however, "preclude a grant of asylum" to Stenaj if she is "an otherwise eligible dependent who has filed a separate asylum application." *Id.*

petition for review from the BIA's final decision.[4] The BIA denied the motion to reopen, and Stenaj

timely petitioned for review in this court.

## II. ANALYSIS

The denial of a motion to reopen is a final order subject to judicial review. 8 U.S.C.

§ 1252(a); *Prekaj v. INS*, 384 F.3d 265, 268 (6th Cir. 2004); *see also Kucana v. Holder*, 558 U.S.

----, 130 S. Ct. 827, 840 (2010). "The decision to grant or deny a motion to reopen . . . is within the

discretion of the Board." 8 C.F.R. § 1003.2(a). Accordingly, we review for abuse of discretion the

BIA's denial of a motion to reopen. *Scorteanu v. INS*, 339 F.3d 407, 411 (6th Cir. 2003). The BIA

abuses its discretion when "the denial of the motion to reopen was made without a rational

explanation, inexplicably departed from established policies, or rested on an impermissible basis

such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d

668, 675 (6th Cir. 2005) (internal quotation marks and alterations omitted).

A motion to reopen, accompanied by the appropriate application for relief, "shall state the

new facts that will be proven" and "shall not be granted unless . . . th[e] evidence sought to be

offered is material and was not available and could not have been discovered or presented at the

former hearing." 8 C.F.R. § 1003.2(c)(1). The BIA may properly deny the motion if the movant

"'fail[s] to establish a prima facie case for the relief sought, [if the movant] fail[s] to introduce

---

[4]A child of an asylum applicant does not qualify for derivative status if she is married or has attained twenty-one years of age. 8 U.S.C. § 1101(b)(1); 8 C.F.R. § 1208.21(c). We note that Stenaj turned twenty-one years old in January 2008, before her marriage, and was no longer eligible for derivative status from that time forward.

previously unavailable, material evidence, [or if the BIA] determin[es] that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought.'" *Yan Xia Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008) (quoting *INS v. Doherty*, 502 U.S. 314, 323 (1992)).

In her motion to reopen, Stenaj asserted that, because she was a child at the time of the March 2002 attack, the harm she experienced was more severe than that inflicted on her mother. As a result, she argued, the harm to her might rise to the level of past persecution, even if the harm to her mother did not. Accordingly, she requested the opportunity to present her own claim for relief.

As the BIA noted, however, Stenaj was provided a full opportunity to testify before the IJ in the earlier proceedings. She and her mother testified that Stenaj was fifteen years old when she was attacked, that she was beaten, and that the attack was especially frightening for her because she was young. This evidence was noted in the BIA's original decision. In dismissing the appeal, the BIA considered the harm to Stenaj and concluded that the evidence did not establish past persecution on account of a protected ground. Indeed, both Marije and Stenaj testified that they did not know why the attackers came to their home.

Stenaj has not provided any additional evidence to overcome the BIA's findings. Indeed, she acknowledged that "[h]er claim is based on the same set of facts" as her mother's. A.R. at 878 (Mot. to Reopen). Accordingly, the BIA did not abuse its discretion when it concluded that Stenaj presented no new evidence supporting her theory of relief. *See Guo Ping Wu v. Holder*, 339 F. App'x 596, 600 (6th Cir. 2009) (unpublished opinion).

5

In her brief here, Stenaj asserts one additional argument in favor of reopening: that she was not given the opportunity to present evidence regarding the threat of forced prostitution that she would face in Albania. The administrative record, however, shows that Stenaj presented evidence of forced prostitution in the prior proceedings and that this evidence was considered by the BIA. Marije testified before the IJ that after the attacks, the family received two letters at their home threatening to take Stenaj to Italy. Stenaj testified that she was afraid she would be taken to Italy to work as a prostitute. The administrative record, furthermore, contained several reports specifically documenting the trafficking of women in Albania, including reports from the State Department and Human Rights Watch. The BIA took note of the attackers' threats against Stenaj and determined that this evidence alone was not a sufficient basis for granting relief.

Stenaj does not argue that she could present new material facts not offered in support of the original application. Rather, Stenaj's application was based on the same facts and theory of relief as her mother's, namely "that she will face persecution in Albania because her brothers and other family members were anti-Communist and were active in the Democratic Party." A.R. at 872 (BIA Decision Denying Mot. to Reopen). She has provided no new evidence of well-founded fear for the BIA to consider. Accordingly, the BIA's denial neither lacks a rational explanation nor rests on an impermissible basis, and was within the discretion afforded to the BIA on motions to reopen.

### III. CONCLUSION

Because the BIA did not abuse its discretion in denying the motion to reopen, we **DENY** Stenaj's petition for review.

6